# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

PAUL MISHLER, JR.           )
                                     )
                  Petitioner,       )
                                     )   Case No. 3:14-CV-1953-JVB
v.                                 )
                                     )
SUPERINTENDENT,         )
                                     )
                  Respondent.     )

## OPINION AND ORDER

Paul Mishler, Jr., a *pro se* prisoner, filed a habeas petition under 28 U.S.C. § 2254 challenging a state conviction and thirty-eight year sentence for child molestation committed in Elkhart County, Indiana in *State v. Mishler*, 20D03-0602-FA-3. (DE 1.)

## I.    BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Mishler's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts surrounding Mishler's offenses as follows:

> B.P. was born on October 6, 1995, and just before she began attending kindergarten at age five, she was living in Elkhart County with her mother, Angela Passerallo, twenty-nine-year-old Mishler, and a younger half-brother. Mishler, who was engaged to Passerallo, is the father of her son.
>
> Around the time that B.P. was in the second and fourth grades, Mishler entered her bedroom during the night on two occasions. When the incidents occurred, B.P. was living in different houses and attending different schools.
>
> On the first occasion, which the State alleged occurred "on or between May, 2005 through January, 2006," appellant's app. p. 72, Mishler pulled B.P.'s pants to her knees and "started licking" her "private," tr. p. 75–76. Mishler also touched B.P.'s vagina with his finger in an "up and down" motion. Id. at 78–79, 92. Although B.P. pretended to be asleep during the incident, she watched Mishler leave the room. On the second occasion, which allegedly occurred during

the same time period, Mishler put "his finger in [B.P.'s] private and licked it."Id. at 72.

On January 26, 2006, B.P. informed her school counselor, Victor Burson, about the incidents. That same day, B.P. gave accounts of the touchings to Shannon Simmons from child protective services and forensic interviewer Gayla Konanz. During the videotaped interview, B.P. claimed that "almost every night," Mishler entered her "bedroom and licked her private." Ex. 3. B.P. also told Simmons that "Big Paul" had "touched her boobs over her clothes." Appellant's App. p. 28.

After the interviews, Passerallo took the children to their grandmother's home so she could confront Mishler about the incidents. At some point, the grandmother heard Passerallo ask B.P., "[d]id this really happen or was this a dream?" Id. at 48. B.P. responded by becoming withdrawn, which her grandmother described as B.P.'s typical reaction to scolding, accusations against her, humiliation, and antagonizing behavior.

The following day, B.P. returned to Burson's office with a "bland expression." Id. at 216–17. Burson asked B.P. "what was going on," and B.P. responded that "she ... thinks it was a dream." Id. at 217. B.P. clarified that she thought "[t]he part about [her] getting licked in [her] private parts" was a dream. Id. Burson then permitted B.P. to call Passerallo. Burson overheard B.P. raise her voice and angrily tell Passerallo, "I know what happened." Id. at 219. Burson then spoke with Passerallo and she acknowledged that she had suggested to B.P. several times that the alleged incidents might have been a dream.

Thereafter, the State charged Mishler with two counts of class A felony child molesting. Prior to trial, the State filed a "Notice to Defendant of Intent to Introduce Statement/Videotape or Child Witness Statements/Video Tape Pursuant to I.C. 35–37–4–6(f)." Appellant's App. p. 14–15, 74–81. Mishler opposed the motion, claiming that the admission of B.P.'s statements at trial would violate the rule against hearsay evidence. At a pretrial hearing on the State's motion, the State presented testimony from B.P., Burson, Simmons, and Konanz. Thereafter, the trial court granted the State's request to admit B.P.'s statements and the videotaped interview into evidence.

At a jury trial that commenced on September 24, 2007, B.P. testified that Mishler "put his finger in [her] private and licked it." Appellant's App. p. 41. However, on cross-examination, B.P. testified that the alleged incidents "may have been a dream." Id. at 42. B.P. further testified that Passerallo talked to her on multiple occasions about the possibility that she had only dreamed about Mishler's actions. At the conclusion of the trial, Mishler was found guilty as charged.

Thereafter, Mishler was sentenced to fifty years of incarceration in the Indiana Department of Correction on each count, to run concurrently. In support of the sentence, the trial court identified the following aggravating circumstances: (1) Mishler's juvenile adjudications for acts that would be child molesting had they been committed by an adult; (2) the failure to obtain sufficient counseling to avoid reoccurences of that behavior; (3) the violation of a position of trust; and (4) Mishler's adult criminal history. The trial court found the absence of prior felony convictions as the sole mitigating factor.

*Mishler v. State*, 894 N.E.2d 1095, 1097-99 (Ind. Ct. App. 2008). Ex. E (record citations in original).

After his conviction, Mishler appealed, arguing: (1) the evidence was insufficient; (2) the victim's out-of-court statements were improperly admitted; and (3) that his sentence was inappropriate. (DE 6-2; DE 6-3.) The Indiana Court of Appeals affirmed Mishler's convictions, but reversed and revised his sentence to thirty-eight years. (DE 6-5.) Mishler did not seek further review by the Indiana Supreme Court. (DE 6-2.) The trial court entered a new sentencing order, revising Mishler's sentence to thirty-eight years. (DE 6-1.

On September 17, 2009, Mishler filed a petition for post-conviction relief in State court. (DE 6-1.) After a hearing, the post-conviction court denied Mishler's request for post-conviction relief. (DE 6-1.) Mishler appealed, arguing that: (1) he was denied a full post-conviction hearing; and (2) his trial, appellate, and post-conviction counsel were ineffective. (DE 6-7 at 2.) The Indiana Court of Appeals denied Mishler's appeal. (DE 6-9.) Mishler sought transfer to the Indiana Supreme Court, claiming: (1) the trial court erred by using his juvenile adjudications as aggravating circumstances; (2) there was insufficient evidence to prove when the charged offenses occurred; (3) his trial counsel was ineffective for failing to call witnesses; and (4) the post-conviction court denied him

due process by failing to issue subpoenas and by not entering written findings of fact and conclusions of law. (DE 6-10 at 1, 2.) The Indiana Supreme Court denied transfer. (DE 6-6.)

On October 14, 2014, Mishler filed this federal habeas petition challenging his convictions for child molestation, arguing that: (1) trial counsel was ineffective for failing to argue for a directed verdict based on the testimony of the victim; (2) trial and appellate counsel were ineffective for failing to challenge the trial court's use of aggravating factors at sentencing; (3) there was insufficient evidence to prove when the charged offenses occurred possibly violating the Double Jeopardy clause; (4) trial counsel was ineffective for failing to properly investigate his case and call witnesses to impeach the victim; and, (5) the post-conviction court denied him due process by not issuing subpoenas or entering findings of fact and conclusions of law. (DE 1 at 3, 4.)

II.     ANALYSIS

Mishler's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any

claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A.      Procedurally defaulted claims

As a threshold matter, the Respondent argues that the first four of Mishler's five claims are procedurally defaulted. Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity; the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845.

The companion procedural default doctrine, also rooted in comity concerns, precludes a federal court from reaching the merits of a habeas petition when either: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501

U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514. When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853-54.

The record indicates that Mishler did not raise his first claim - trial counsel's ineffectiveness for failing to argue for a directed verdict based on the victim's testimony- to the Indiana Supreme Court. (DE 6-7, 6-9.) In his traverse, Mishler attempts to argue that this claim is not defaulted because he raised the issue before the Indiana Court of Appeals. (DE 16-3.) Although whether he actually raised the issue is questionable, (See DE 6-7), it is clear that he never raised it to the Indiana Supreme Court, (DE 6-10), which he was required to do. The record also indicates that he did not raise his second claim - trial and appellate counsel's ineffectiveness for failing to object to the aggravating sentencing factors - was not presented as an independent claim before the Indiana Court of Appeals or Indiana Supreme Court. (DE 6-7; 6-10.) Although Mishler complained about the use of aggravating sentencing factors, he did not argue that the errors were incidents of ineffective assistance of counsel. Mishler's third claim - a double jeopardy violation due to the State's failure to present evidence as to when the crimes occurred - was raised before the Indiana Supreme Court, (DE 6-11), but was not presented as an independent claim to the Indiana Court of Appeals. (DE 6-7.) Mishler concedes as much.[1] (DE 16-3.) Indiana law forbids parties from raising new claims in a petition to transfer, in a petition

---

[1] At the Indiana Court of Appeals, Mishler raised the issue that his counsel was ineffective for filing to raise a double jeopardy violation. At the Indiana Supreme Court and here, Mishler raised only an underlying double jeopardy violation. Now Mishler claims that he meant to couch his arguments here and to the Indiana Supreme Court as "ineffective assistance of counsel for failing to argue double jeopardy." (DE 16 at 5.) But, he did not.

Nevertheless, even if he did, the outcome would be the same. The Indiana Court of Appeals found that his underlying double jeopardy claim was without merit and therefore, counsel could not have been ineffective for failing to raise it. (DE 6-9.) This is a proper application of *Strickland v. Washington*. *Bell v. Cone*, 535 U.S. 685, 699 (2002).

for rehearing, or in a reply brief. *See Donnegan v. State*, 889 N.E.2d 886, 893 (Ind. Ct. App. 2008) (citing *Bunch v. State*, 778 N.E.2d 1285, 1290 n. 3 (Ind. 2002) (affirming that an issue not raised in the appellant's principal brief is waived); *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) (finding that the defendants waived an issue raised for the first time in their brief in support of petition to transfer). As a result, Mishler's first three claims are procedurally defaulted.

Mishler failed to fully and fairly present his fourth claim - trial counsel was ineffective for failing to investigate and call witnesses to impeach the victim - to the Indiana Court of Appeals. (DE 6-9 at 11.) While he vaguely raised this issue on direct appeal, the court of appeals determined that he "fail[ed] to develop cogent argument explaining how counsel could have, within the bounds of the law, achieved a different outcome. . . . Mishler's bald assertions of counsel's omissions or mistakes are inadequate to support a post-conviction claim of ineffectiveness of counsel." (*Id.*) (citation omitted.) Moreover, Mishler's claim underlying this ineffective assistance of counsel claim - seeking more investigation and witnesses to impeach the victim - was denied on an independent and adequate state law ground. In evaluating Mishler's claim that he was denied the ability to show trial counsel's ineffectiveness because the post-conviction court denied his request to issue subpoenas, the Indiana Court of Appeals provided:

> The post-conviction court denied Mishler's requested subpoenas for five individuals: Rodney Dellinger, Aylissa Dellinger, Deb Peddler, Tina Passerallo, and Luann Todd. Mishler's affidavits in support of his requests for subpoenas of these persons were generally speculative and exploratory, or anticipated hearsay testimony. Mishler responded to the denials by requesting that the post-conviction court certify its order for discretionary interlocutory appeal by this Court.
>
> At a hearing addressing the motion, Mishler advised the post-conviction court that Rodney Dellinger's anticipated testimony was that Mishler's trial counsel failed to contact him regarding what information Rodney's daughter,

Aylissa Dellinger, might have. He succinctly explained to the court, "the whole, primary [reason] for those five witnesses is the fact that Mr. Stevens never established contact with them to do a proper investigation because they did retain information to my case." (P.C.R. Tr. 46-47) Mishler conceded that Rodney Dellinger lacked knowledge of the facts of the case: "He couldn't even come in here and say anything about it because he did not even know that his daughter had came [sic] and told Deb Peddler some information that B.P. had said to her." (P.C.E. Tr. 47) Ultimately, however, Mishler hoped to produce evidence that "Aylissa came forth on January 26 [2006] and told that B.P. was going to do whatever it took to get me kicked out of my house" and that, after the trial, "B.P. had came [sic] forward and said to Tina and her daughter…that she did this, what she did, or she made this stuff up to go live with grandma. And again Mr. Stevens never contacted her." (P.C.E. Tr. 47-48) Mishler conceded that the latter statement, having been made after trial, could not have been available to his trial counsel. Finally, Mishler stated that he expected Luann Todd, B.P.'s therapist, to render a "professional opinion" that B.P. had failed to specifically identify Mishler as her assailant, causing Todd to disbelieve that Mishler was the perpetrator of crimes against B.P. (P.C.E. Tr. 49.)

In sum, Mishler contended that, had his trial counsel been sufficiently diligent in his investigation, he would have uncovered more evidence to undermine B.P.'s credibility. He does not establish, however, that hearsay statements or confidential statements to a health care provider would have been admissible for such a purpose [footnote omitted]. As for the statement allegedly made after trial, Mishler contended that appellate counsel should have uncovered its existence. The post-conviction court correctly concluded that appellate counsel was not required to seek factual information outside the trial record.

We find no abuse of discretion in the post-conviction court's refusal to permit Mishler to elicit hearsay (in some instances, double hearsay) testimony or privileged information. Nor was the court required to assist Mishler in pursuing potential and speculative challenges to the credibility of trial witnesses. Post-conviction proceedings are not designed to permit attacks upon trial witness credibility, but rather to address issues demonstrably unavailable at trial and on direct appeal.

(Ex. I at 5-7.)

The Indiana Court of Appeals demonstrated that Mishler did not present any evidence to support a challenge to his trial counsel's alleged failure to investigate. And, further, he failed to show that any witness he wanted to present would have provided any admissible or supportive

testimony. Ultimately, Mishler failed to fully and fairly present his claim to the state appellate courts and his underlying claim was denied on an independent and adequate state law claim. Therefore, Mishler did not properly present any of these four claims in one complete round of state review, and they cannot be reached on the merits unless he provides grounds for excusing his two levels of default.

A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 2382 (2009). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Here, Mishler does not even attempt to argue cause or prejudice. A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Mishler does not argue that any such fundamental miscarriage of justice would occur.

Because Mishler can not show cause for his failure to present these claims in one complete round of state review or that any fundamental miscarriage of justice would occur if the claims are not addressed, these claims are procedurally defaulted and cannot be reviewed on their merits.

B.    Mishler's due process challenge to the post-conviction court

Mishler has preserved his claim that the post-conviction court did not issue subpoenas for requested witnesses and failed to enter written findings of facts and conclusions of law. Nevertheless, the respondent argues that, even though these claims are preserved, they are not cognizable. The Court agrees. Although Mishler included the words "due process," his claims are premised on alleged errors committed by the state court on post-conviction review. (DE 1 at 4.) Federal habeas relief is not available for errors occurring in the state post-conviction proceedings, since such errors do not implicate the legality of the petitioner's confinement. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987); see Jones v. Butler, 778 F.3d 575, 586 (7th Cir. 2015) (holding that post-conviction court's denial of evidentiary hearing was simply a challenge to state law post-conviction procedures and not cognizable on habeas review); *Jackson v. Duckworth*, 112 F.3d 878 (7th Cir. 1997). Mishler may not "transform a state-law issue into a federal one merely by asserting a violation of due process." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). Because Mishler's claim does not present an independent basis for overturning his conviction, it is not a basis for habeas relief.

Finally, Mishler complains that the post-conviction court should not have allowed his post-conviction counsel to withdraw from the case. Even assuming Mishler could establish the factual basis for this claim, he had no right to counsel during the state post-conviction proceedings. *Finley*, 481 U.S. at 555; *Wainwright*, 455 U.S. at 587. Therefore, he cannot claim the court deprived him of any constitutional rights. Nor can he allege any ineffective assistance of counsel under the Sixth Amendment based on counsel's alleged deficient performance. *Coleman*, 501 U.S. 752; *Anderson v. Cowan*, 227 F.3d 893, 901 (7th Cir. 2000).

C.     Certificate of Appealability

Pursuant to RULE 11 of the RULES GOVERNING SECTION 2254 CASES, the court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). For the reasons fully explained above, four of Mishler's claims are procedurally defaulted, and he has not provided any meritorious basis for excusing his default. As to his fifth claim, Mishler has not made a substantial showing of the denial of a constitutional right, nor could jurists of reason debate the outcome of the claim or find a reason to encourage him to proceed further. Accordingly, the court declines to issue Mishler a certificate of appealability.

III.     CONCLUSION

For the reasons set forth above, the court:

(1) **DENIES** the petition (DE 1);

(2) **DENIES** the petitioner a certificate of appealability.

**SO ORDERED** on April 26, 2016.

 s/ Joseph S. Van Bokkelen   
Joseph S. Van Bokkelen
United States District Judge
Hammond Division